Filed 10/5/20  In re L.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.M. et al., a Person Coming Under the Juvenile Court of Law. | B302609 |
| | (Los Angeles County Super. Ct. No. 19CCJP05558) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff, | |
| v. | |
| LEONARD M., | |
| Defendant and Appellant; | |
| HEATHER R., | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rashida A. Adams, Judge.  Reversed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Terence M. Chucas, under appointment by the Court of Appeal, for Respondent.

_____

Leonard M. appeals from a juvenile court order denying his motion to permit visitation with his child after reunification services were denied.  We reverse.

## BACKGROUND

The family in this case consists of Leonard M. (father), Heather R. (mother), and L.M., age five.

Father also had three children with another woman, but in 2000 relinquished his parental rights to the children after being convicted for threatening their mother with great bodily injury (Pen. Code, § 422).  Father maintained contact with the children from prison, and stayed in regular contact with them for a time after he was released.

L.M. was born in April 2014.  On June 8, 2014, father slapped mother's stomach and pinned her to the ground.  On June 13, mother rammed father's car with her own car, injuring him.  She was arrested and charged with assault with a deadly weapon.  The Department of Children and Family Services (DCFS) filed a petition with the superior court alleging the parents' history of substance abuse and of engaging in violent altercations in L.M.'s presence endangered the child.  The court sustained the petition and ordered reunification services, but on January 6, 2016, found that father had failed to comply with the case plan.  The court granted mother sole legal and physical

2

custody of L.M., ordered monitored visits for father, and dismissed the proceedings.

In March 2016, father was arrested for battery on his live-in girlfriend, drug intoxication, and willful discharge of a firearm. He was ultimately convicted and sentenced to five years in prison, and while incarcerated completed parenting classes and attended Narcotics Anonymous meetings.

On December 6, 2017, mother obtained a protective order prohibiting father from contacting her or L.M. The order does not explain the circumstances leading up to its issuance, and the record on appeal offers no illumination.

Father was released from prison in May 2019. He got a job, began attending a 12-step program, participated in drug testing, admitted to smoking marijuana to help with back and knee pain, and claimed to have been free of harder drugs for six years.

Mother reported that father called her phone and sent text messages and videos of L.M., but she did not respond to his calls and had no contact with him.

Father reported that on the contrary, mother initiated contact with him, said she needed to know his blood type for L.M.'s medical treatment, said the restraining order had been revoked, and invited him to her place to visit the child. He visited the child for 30 minutes, after which he and mother engaged in sex. Two days later she invited him to see L.M. again, but failed to appear at the rendezvous.

Texts from mother's phone supported father's version of events, and the maternal grandmother and a social worker reported that mother was not credible. The social worker reported that mother initiated contact with father upon his release from prison.

In August 2019, mother began using methamphetamine and drinking alcohol, and on August 6 threatened to kill herself in L.M.'s presence. She stabbed herself several times in the neck with an Exacto-knife, and was hospitalized pursuant to Welfare and Institutions Code section 5150 (involuntary restraint to address self-harming issues).

On August 27, 2019, DCFS filed a petition alleging that mother had a history of substance abuse and mental and emotional problems, including diagnoses of Major Depressive Disorder, Alcohol Use Disorder, and Unspecified Anxiety Disorder, which drove her to self-harming behaviors, including the suicide attempt on August 6th, 2019, when she stabbed herself in the neck while L.M. was present. After father appeared in the proceedings, DCFS amended the petition to further allege that his history of domestic violence in L.M.'s presence endangered the child. On October 1, 2019, the juvenile court sustained the petition, and ultimately ordered reunification services for mother but not father, ordering that father "remain removed from [L.M.]."

As of October 2, 2019, father had enrolled in a domestic violence program and attended two sessions, and his parole officer reported he was in compliance with all parole conditions.

On November 20, 2019, DCFS recommended that father have monitored visitation with L.M. However, the court found that several petitions had been filed as to father's children, all of which referenced his history of domestic violence, and he had been ordered to complete domestic violence counseling in 1996 and 1997 but failed to do so. The court found that although father had recently enrolled in a domestic violence program, that enrollment came five months after his release from custody, "and

4

even after the detention in this matter." The court found that father had made no "reasonable efforts to address the underlying issues which led to the removal of those children or the removal of this child with respect to domestic violence." The court found there was no "clear and convincing evidence that offering reunification services would be in the child's best interest. The court has not been presented with evidence of a significant bond between the father and this child. However, there was already an existing restraining order, which did not even allow for visitation. [¶] The evidence is undisputed that any relationship has been minimal. And this, combined with the father's continued minimization of domestic violence, indicates to this court that there is . . . not clear and convincing evidence that ordering reunification services would be in the child's best interest."

Father then requested modification of the restraining order to allow for visits. DCFS offered no opposition to the request, but mother did. The court found that father had "participated in only a small number of programs related to domestic violence," had minimized and failed to recognize the domestic violence in his relationships, showed little to no rehabilitation, and established no meaningful relationship with L.M. The court found that modifying the restraining order would not be in the child's best interest at that time, but stated that if the order was modified in the future to allow visits, they would be monitored by someone approved by DCFS, and mother could not be present.

Father appeals the denial of his request to modify the restraining order. DCFS filed a letter indicating it would offer no opposition to the appeal. Mother, however, filed an opposition brief.

## DISCUSSION

Father contends no substantial evidence supports the juvenile court's finding that visitation would be detrimental to L.M. We agree.

Visitation is an essential part of a reunification plan. "In order to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, any order placing a child in foster care, and ordering reunification services, shall provide as follows:  [¶] (1)(A) Subject to subparagraph (B), for visitation between the parent or guardian and the child.  Visitation shall be as frequent as possible, consistent with the well-being of the child." (Welf. & Inst. Code, § 362.1, subd. (a).)[1]

But "visitation is not integral to the overall plan when the parent is not participating in the reunification efforts." (*In re J.N.* (2006) 138 Cal.App.4th 450, 458.)

When a court has denied a parent reunification services, it "*may* continue to permit the parent to visit the child" but need not do so, and *may not* do so if "it finds that visitation would be detrimental to the child." (§ 361.5, subd. (f), italics added.)

"If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court," and "an order has been entered with regard to the custody of that minor, the juvenile court . . . may issue a protective order . . . determining . . . visitation with[] the child." (§ 362.4, subd. (a).)  Any such order "shall continue until modified or

---

[1] All further statutory references shall be to the Welfare and Institutions Code.

6

terminated by a subsequent order of the superior court." (*Id.* at subd. (b).)

"[T]he best interest standard governs in dependency proceedings, and the juvenile court should exercise its discretion to craft visitation orders for nonparents only after making a finding that doing so would be in the child's best interest." (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1122.)

"[S]ection 361.5, subdivision (f) does not dictate a particular standard the juvenile court must apply when exercising its discretion to permit or deny visitation between a child and a parent who has not been receiving reunification services. The Legislature instead left this determination to the court's discretion for the narrow group of parents described in section 361.5, subdivision (f) who have been denied reunification services at the outset." (*In re J.N., supra,* 138 Cal.App.4th at p. 459.) The question is whether the juvenile court abused its discretion when it found contact with father would not be in L.M.'s best interest.

" ' ["]The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Here, Father was incarcerated when L.M. was two years old, and had virtually no contact with the child for most of his life. There is no evidence that L.M. has bonded with father, that father has functioned as a parent to the child, or that they enjoy any kind of relationship. Their only recent contact appears to have been one 30-minute visit.

On the other hand, nothing in the record suggests that visits with father would be detrimental to L.M. Although the trial court ostensibly considered the child's best interests when it denied visitation, its finding that father had a history of domestic violence in his relationships with adult women failed to establish any detriment that visitation would pose to L.M. On the contrary, the court's pertinent finding on that account, that father had as yet established no meaningful relationship with L.M., undercut its decision to disallow supervised visitation, which after all would allow the child to bond with father while overseen by a neutral party who could observe and report on their progress.

L.M.'s young life has been tumultuous, and sadly, mother appears to be struggling to nurture the child at this point in *her life*. Under these circumstances, we conclude it was premature for the court to conclude that the child's need for stability and a viable path forward would be impinged by supervised visitation with father.

### DISPOSITION

The order is reversed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.          SINANIAN, J.*

---

\* Judge of the Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.